**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**RENITA SHORES-GASTON, Individually and as Personal Representative of the Estate and Person of ANTONIO GASTON, deceased**
2912 16th Street
Rockford, Illinois 61109

Plaintiff,

v.

**FCA US LLC**
c/o Statutory Agent
CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

and

**DEARBORN MID-WEST COMPANY, LLC**
c/o Statutory Agent
CSC-Lawyers Incorporating Service
3410 Belle Chase Way, Suite 600
Lansing, Michigan 48911

and

**JOHN DOES NOS. 1-5**
As employees, agents, independent contractors, and/or entities who were responsible for the care, management, inspection, and safety of the conveyor system located at FCA US's Toledo Assembly Complex.

Defendants.

Case No.: 3:25-cv-01903

Hon. Jack Zouhary

**AMENDED COMPLAINT**

**Jury Demand Endorsed Hereon**

Now comes Plaintiff Renita Shores-Gaston, Individually and as the Personal Representative of the person and estate of Antonio Gaston, deceased ("Plaintiff"), by and through undersigned counsel, and for her Complaint against Defendants FCA US LLC ("FCA US"),

Dearborn Mid-West Company, LLC ("Dearborn Mid-West), and John Does No. 1-5 (collectively, "Defendants"), states as follows:

## INTRODUCTION

1. This action arises out of the death of the decedent, Antonio Gaston (the "Decedent"), while he was working within the course and scope of his employment with FCA US at its facility located at 4400 Chrysler Drive, Toledo, Ohio 43608 ("Toledo Assembly Complex").

2. The Decedent's death was caused by Defendants' deliberate removal of a critical equipment safety guard for pinch point hazards on the inverted IPF Chassis Delivery Conveyor ("Conveyor System") on which the Decedent was working at the time of his death and/or Dearborn Mid-West's installation, maintenance, design, manufacture, and sale of the unreasonably dangerous Conveyor System on which the Decedent was working at the time of his death without a critical equipment safety guard for pinch point hazards.

3. As a direct and proximate result of Defendants' actions and inactions, as stated fully herein, the Decedent became caught under a vehicle chassis moving on the assembly line and was fatally crushed.

4. Plaintiff brings this action against Defendants for pre-death pain and suffering and loss of future earning capacity by the Decedent and wrongful death damages on behalf of the wrongful death beneficiaries, including the following claims: (1) employer intentional tort pursuant to O.R.C. § 2745.01, *et. seq.* against FCA US and John Does Nos. 1-5; (2) common law intentional tort against FCA US and John Does Nos. 1-5; (3) strict product liability (manufacturing defect) pursuant to § O.R.C. 2307.74 against Dearborn Mid-West; (4) strict product liability (design defect) pursuant to § O.R.C. 2307.75 against Dearborn Mid-West; (5) strict product liability (failure to warn) pursuant to O.R.C. § 2307.76 against Dearborn Mid-West; (6) supplier

liability pursuant to O.R.C. § 2307.78 against Dearborn Mid-West; (7) negligence against Dearborn Mid-West for the negligent performance of its post-sale installation and/or maintenance services; (8) wrongful death pursuant to O.R.C. § 2125, *et seq.* against Defendants; and (8) survivorship pursuant to O.R.C. § 2305.21 against Defendants.

**PARTIES**

5. At all times relevant herein, Plaintiff Renita Shores-Gaston is the duly appointed Administrator of the Estate of Antonio Gaston, having been appointed by the Circuit Court of the 17th Judicial Circuit, Winnebago County, Illinois on May 5, 2025. *See* Order Appointing Independent Representative of Decedent's Estate - Intestate (attached as **"Exhibit A"**). Plaintiff is a resident of the City Rockford, County of Winnebago, and State of Illinois.

6. At all times relevant herein, Plaintiff Renita Shores-Gaston was married to Antonio Gaston, deceased, who was an employee of Defendant FCA US LLC.

7. At all times relevant herein, Defendant FCA US LLC was a Delaware limited liability company with its principal place of business located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

8. At all times relevant herein, FCA US owned and operated the facility located at 4400 Chrysler Drive, Toledo, Ohio 43608 and was the employer of the Decedent, Antonio Gaston. FCA US owned, operated, and/or maintained the Conveyor System that caused the Decedent's death.

9. At all times relevant herein, Defendant Dearborn Mid-West Company, LLC was a Delaware limited liability company with its principal place of business located at 20334 Superior Road, Taylor, Michigan 48180.

10. At all times relevant herein, Dearborn Mid-West designed, manufactured, sold, installed, and performed maintenance on the Conveyor System that caused the Decedent's death.

11. At all times relevant herein, Defendant(s) John Does Nos. 1-5 (names and addresses unknown) was/were employees, independent contractors, individuals, and/or entities who were responsible under the theory of *respondeat superior* and/or contract and/or otherwise for the safety of the Decedent, Antonio Gaston, and/or the care, management, instruction, and safety of the conveyor system located at FCA US's Toledo Assembly Complex, but whom, through written discovery and/or deposition, may become known as being persons or entities properly included as Defendants in this case.

## JURISDICTION AND VENUE

12. Defendants are subject to personal jurisdiction in Ohio because they transact substantial business in Ohio and because they caused tortious injury to Plaintiff in Ohio by acts or omissions that occurred in Ohio.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL BACKGROUND

15. On August 21, 2024, at approximately 1:30 p.m., the Decedent was working for FCA US at its Toledo Assembly Complex on the Jeep Gladiator Line.

16. On August 21, 2024, the Decedent was 53 years old, was married, and had both adult and minor children under his care.

17. The Decedent was assigned by Defendants FCA US and/or John Does Nos. 1-5 to tighten the undercarriage body bolts on vehicle chassis that moved through the Jeep Gladiator assembly line on the Conveyor System.

18. Upon information and belief, Defendant Dearborn Mid-West contracted with and/or otherwise reached an agreement with FCA US to design, manufacture, sell, install, and/or perform post-sale maintenance on the Conveyor System.

19. Defendants deliberately removed a critical equipment safety guard for pinch point hazards on the Conveyor System and/or Defendant Dearborn Mid-West designed, manufactured, sold, and installed the Conveyor System without critical equipment safety guards for pinch points, which exposed the Decedent to hazards from steel trolley wheels, travel rail tracks, and vehicle hub assemblies.

20. While performing his job duties within the course and scope of his employment with FCA US, the production line inadvertently activated and the Decedent became pinned by a vehicle chassis moving on the Conveyor System and was fatally crushed.

21. Had the Conveyor System been equipped with critical equipment safety guards for pinch point hazards at the time the Decedent was working on the Conveyor System, his death would not have occurred.

22. The Lucas County Coroner, Dr. Thomas Blomquist, determined the cause of death for the Decedent to be crushing injuries of the torso, and determined that the death was not instantaneous.

23. As a result of the Decedent's death, the Occupational Safety and Health Administration ("OSHA") performed an inspection of the Toledo Assembly Complex. OSHA's inspection revealed that the Conveyor System, which transports vehicle chassis through various workstations, lacked proper guarding at pinch points where employees could be caught between moving parts, like occurred with the Decedent.

24. Specifically, OSHA found that, on August 21, 2024, FCA US failed to ensure that pinch points on the Conveyor System were effectively guarded and that, without the benefit of effective guarding, employees assigned with associated assembly tasks on the Conveyor System were exposed to pinch point hazards created by the Conveyor System components, including, but not limited to, steel trolley wheels, travel rail tracks, and the vehicle hub assemblies as the conveyor indexed forward.

25. As a result of the Decedent's death, OSHA cited FCA US for a serious safety violation for violations of the Occupational Safety and Health Act of 1970. Specifically, OSHA cited FCA US for violation of C.F.R. § 1910.212(a)(1), finding that one or more methods of machine guarding were not provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips, and sparks.

26. OSHA also assessed a monetary penalty against FCA US and ordered FCA US to abate the dangerous condition that caused the Decedent's death pursuant to 29 C.F.R. § 1903.19(d).

## CLAIMS ALLEGED

### COUNT I
**Employer Intentional Tort, O.R.C. § 2745.01, *et. seq.***
**(Against FCA US and John Does Nos. 1-5)**

27. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

28. At all relevant times, the Decedent was an employee of FCA US.

29. On or about August 21, 2024, the Decedent was working at FCA US's Toledo Assembly Complex on the Conveyor System, tightening the undercarriage body bolts on vehicle chassis that moved through the Jeep Gladiator assembly line, when he became caught under a vehicle chassis moving on the assembly line and was fatally crushed.

30. As a result of the Decedent's death, OSHA performed an inspection of the Toledo Assembly Complex and concluded that the Conveyor System lacked proper guarding at pinch points where employees could be caught between moving parts.

31. Defendants FCA US and/or John Does Nos. 1-5 deliberately removed a critical equipment safety guard for pinch points on the Conveyor System, which exposed the Decedent to hazards from steel trolley wheels, travel rail tracks, and vehicle hub assemblies.

32. Defendants FCA US and John Does Nos. 1-5, with knowledge of a dangerous process, procedure and/or condition, and inevitability of injury, intentionally, purposefully, and with substantial certainty caused serious injury and death to the Decedent by the aforementioned and following acts:

a. Knowingly creating and allowing a dangerous work condition to continuously exist;

b. Knowingly, intentionally, and deliberately requiring the Decedent to work on the Conveyor System lacking the known, necessary equipment safety guards;

c. Knowingly, intentionally, and deliberately requiring the Decedent to work on the Conveyor System despite knowing the danger of serious injury and death was inevitable and substantially certain to occur under the circumstances where they deliberately left off and/or removed critical safety guard components

specifically designed to prevent persons from being caught under a vehicle chassis moving on the assembly line as occurred in this case; and

d. Knowingly, intentionally, and deliberately failing to train and/or adequately train the Decedent and other employees similarly situated in safe ways to perform the job task at issue.

33. Defendants FCA US and John Does Nos. 1-5 intentionally, purposefully, and with deliberate intent performed or failed to perform the aforementioned acts with substantial certainty that they would and did cause the Decedent to sustain serious injuries and death.

34. Defendants FCA US's and John Does Nos. 1-5's deliberate and conscious actions as set forth above violated O.R.C. § 2745.01(A) and (C)—separately and together—where Defendants FCA US and John Does Nos. 1-5 knowingly and deliberately exposed the Decedent to inadequately guarded Conveyor System creating a known safety hazard in violation of Federal safety regulations and known industry safety standards, rules, instructions, and warnings.

35. As a direct and proximate result of the aforementioned conduct by Defendants FCA US and John Does Nos. 1-5, the Decedent suffered non-economic injuries, including, but not limited to, serious and catastrophic injury and death, pre-death pain and suffering, and economic injuries, including, but not limited to, loss of future earning capacity.

## COUNT II
### Common Law Intentional Tort
### (Against FCA US and John Does Nos. 1-5)

36. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

37. Defendants FCA US and/or John Does Nos. 1-5 knew that operating the Conveyor System in the manner they did (and as described above) constituted a dangerous process,

procedure, and/or instrumentality within Defendants FCA US's and/or John Does Nos. 1-5's business operation.

38. Defendants FCA US and/or John Does Nos. 1-5 knew that if the Decedent worked on the Conveyor System, as described above, the risk of harm and actual harm suffered by the Decedent was substantially certain to occur.

39. At all times relevant hereto, Defendants FCA US and/or John Does Nos. 1-5 concealed, misrepresented, or otherwise failed to warn Decedent of the dangerous and hidden conditions and mechanical processes then existing.

40. With knowledge that the Decedent was being misled about the dangers of working on the Conveyor System, Defendants FCA US and/or John Does Nos. 1-5 nonetheless required the Decedent to continue to work on the Conveyor System.

41. As a direct and proximate result of the aforementioned conduct by Defendants FCA US and/or John Does Nos. 1-5, the Decedent suffered non-economic injuries, including, but not limited to, serious and catastrophic injury and death, pre-death pain and suffering, and economic injuries, including, but not limited to, loss of future earning capacity.

**COUNT III**
**Strict Product Liability – Manufacturing Defect, O.R.C. § 2307.74**
**(Against Dearborn Mid-West)**

42. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

43. At all times relevant to this action, Defendant Dearborn-Midwest was engaged in business to design, formulate, produce, create, make, construct, assemble, or rebuild the Conveyor System, making Defendant Dearborn Mid-West a manufacturer as defined by O.R.C. § 2307.71(A)(9).

44. The Conveyor System was expected to and did reach the ultimate user, including the Decedent, without substantial change in the condition it was manufactured and sold by Defendant Dearborn Mid-West.

45. The Conveyor System was used by the Decedent in a manner that was foreseeable and intended by Defendant Dearborn Mid-West.

46. The Decedent could not, through the exercise of reasonable care, have discovered the defects or perceived the dangers posed by the Conveyor System.

47. The Conveyor System was not reasonably safe for its intended use and was defective with respect to its manufacture, in that, when the Conveyor System left Defendant Dearborn Mid-West's control, it deviated in a material way from the design specifications, formula, or performance standards of Defendant Dearborn-Midwest, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards.

48. Specifically, when the Conveyor System left Defendant Dearborn Mid-West's control, it lacked critical safety guards for pinch point hazards, which deviated from the design specifications and performance standards of Defendant Dearborn-Midwest, as well as otherwise identical units manufactured to the same design specifications that were equipped with critical safety guards for pinch point hazards.

49. The manufacturing defect caused the Decedent to be exposed to and/or caught-in pinch point hazards created by the Conveyor System components, including, but not limited to, steel trolley wheels, travel rail tracks, and the vehicle hub assemblies as the conveyor indexed forward.

50. The Decedent's exposure to the unreasonably dangerous Conveyor System created a risk to the safety of the Decedent that was far more significant than the risks posed by a Conveyor

System equipped with appropriate safety guards for pinch point hazards, and which far outweighs any utility of manufacturing the Conveyor System without critical safety guards for pinch points.

51. Defendant Dearborn Mid-West intentionally and/or recklessly manufactured the Conveyor System without critical safety guards for pinch points with wanton and willful disregard for the rights and safety of the Decedent.

52. As a direct and proximate result of the aforementioned conduct by Defendant Dearborn Mid-West, the Decedent suffered non-economic injuries, including, but not limited to, serious and catastrophic injury and death, pre-death pain and suffering, and economic injuries, including, but not limited to, loss of future earning capacity.

## COUNT IV
## Strict Product Liability – Design Defect, O.R.C. § 2307.75
## (Against Dearborn Mid-West)

53. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

54. At all times relevant to this action, Defendant Dearborn-Midwest was engaged in business to design, formulate, produce, create, make, construct, assemble, or rebuild the Conveyor System, making Defendant Dearborn Mid-West a manufacturer as defined by O.R.C. § 2307.71(A)(9).

55. Defendant Dearborn Mid-West designed, manufactured, tested, marketed, sold, and distributed the Conveyor System that caused the Decedent's death.

56. The Conveyor System was expected to and did reach the ultimate user, including the Decedent, without substantial change in the condition it was designed, manufactured, and sold by Defendant Dearborn Mid-West.

57. The Conveyor System was designed in an unsafe, defective, and inherently dangerous manner that was dangerous for use by the Decedent.

58. The Conveyor System, as researched, tested, developed, designed, manufactured, marketed, distributed, and sold by Defendant Dearborn Mid-West, was defective in design and formulation in that, when it was placed into the stream of commerce, it was unreasonably dangerous to an extent beyond which an ordinary user would contemplate.

59. The Conveyor System, as researched, tested, developed, designed, manufactured, marketed, distributed, and sold by Defendant Dearborn Mid-West, was defective in design and formulation in that, when it was placed into the stream of commerce, the foreseeable risks exceeded the alleged benefits associated with its design and formulation.

60. Defendant Dearborn Mid-West knew or had reason to know that its Conveyor System was defective, inherently dangerous, and unsafe when used in the manner instructed and provided by Defendant Dearborn Mid-West and/or in a reasonably foreseeable manner.

61. Specifically, The Conveyor System, as researched, tested, developed, designed, manufactured, marketed, distributed, and sold by Defendant Dearborn Mid-West, was defective in the following ways:

a. The Conveyor System was unreasonably dangerous in that it was not equipped with critical safety guards for pinch point hazards that could prevent users of the Conveyor System from being exposed to and/or caught-in pinch point hazards created by the Conveyor System components, including, but not limited to, steel trolley wheels, travel rail tracks, and the vehicle hub assemblies as the conveyor indexed forward;

b. Defendant Dearborn Mid-West designed the Conveyor System without critical safety guards for pinch points and, therefore, it was not reasonably safe when used in a reasonably anticipated or intended manner;

c. Defendant Dearborn Mid-West designed the Conveyor System without critical safety guards for pinch points, which violated Federal safety regulations and known industry safety standards;

d. Defendant Dearborn Mid-West did not sufficiently test, investigate, or study the safety of its Conveyor System before placing it in the stream of commerce;

e. The Conveyor System's design without critical safety guards for pinch point hazards presented a risk of harm that outweighed any potential utility from that design;

f. Defendant Dearborn Mid-West did not conduct adequate post-marketing and/or post-sale surveillance of its Conveyor System, which would have alerted the foreseeable users of the Conveyor System to the risks; and

g. Defendant Dearborn Mid-West could have employed safer alternative designs and formulations for the Conveyor System, including ensuring the Conveyor System was equipped with critical safety guards for pinch point hazards.

62. The Conveyor System was more dangerous than alternative products that serve the same or a similar purpose and Defendant Dearborn Mid-West could have designed its Conveyor System to avoid the type of harm that occurred to the Decedent. Indeed, at the time Defendant Dearborn Mid-West designed the Conveyor System, the state of the industry's knowledge was such that a less risky design was attainable.

63. At the time the Conveyor System left Defendant Dearborn Mid-West's control, there was a practical and technically and economically feasible and safer alternative design that would have prevented the harm that occurred to the Decedent without substantially impairing the reasonably anticipated or intended function of the Conveyor System.

64. The design defects in Defendant Dearborn Mid-West's Conveyor System was a substantial factor in causing the Decedent's injuries and death.

65. As a direct and proximate result of the aforementioned conduct by Defendant Dearborn Mid-West, the Decedent suffered non-economic injuries, including, but not limited to, serious and catastrophic injury and death, pre-death pain and suffering, and economic injuries, including, but not limited to, loss of future earning capacity.

**COUNT V**
**Strict Product Liability – Failure to Warn, O.R.C. § 2307.76**
**(Against Dearborn Mid-West)**

66. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

67. At all times relevant to this action, Defendant Dearborn-Midwest was engaged in business to design, formulate, produce, create, make, construct, assemble, or rebuild the Conveyor System, making Defendant Dearborn Mid-West a manufacturer as defined by O.R.C. § 2307.71(A)(9).

68. Defendant Dearborn Mid-West knew, or, by the exercise of reasonable care, should have known that its Conveyor System was not accompanied with adequate warnings concerning the dangerous conditions created by failing to equip the Conveyor System with critical safety guards for pinch point hazards.

69. Defendant Dearborn Mid-West researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Conveyor System and had a duty to warn both purchasers and end users of the risks associated with the failure to equip the Conveyor System with critical safety guards for pinch point hazards.

70. Defendant Dearborn Mid-West had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure its Conveyor System did not cause users to suffer from unreasonable and dangerous risks.

71. Defendant Dearborn Mid-West had a continuing duty to warn purchasers and end users of the Conveyor System, including the Decedent, of dangers associated with the failure to equip the Conveyor System with critical safety guards for pinch point hazards.

72. Defendant Dearborn Mid-West, as a designer, manufacturer, seller, or distributor of the Conveyor System, is held to the knowledge of an expert in the field.

73. Defendant Dearborn Mid-West could have provided warnings regarding the absence of critical safety guards for pinch point hazards and the risks associated therewith because it knew or should have known that, when used in a reasonably foreseeable manner, the lack of critical safety guards for pinch points exposed end users, including the Decedent, to being caught-in pinch point hazards created by the Conveyor System components, including, but not limited to, steel trolley wheels, travel rail tracks, and the vehicle hub assemblies as the conveyor indexed forward.

74. Defendant Dearborn Mid-West failed and/or deliberately refused to investigate, study, test, or promote the safety of or to minimize the dangers to those who would foreseeably use or be harmed by the Conveyor System.

75. Defendant Dearborn Mid-West knew or should have known that failing to equip the Conveyor System with critical safety guards for pinch point hazards posed a risk of harm, but failed to exercise reasonable care to warn of the dangerous risks associated with use of the Conveyor System.

76. The dangerous propensities of equipment and/or machinery without critical safety guards for pinch points are well known in the industry, known to Defendant Dearborn Mid-West, and/or scientifically knowable to Defendant Dearborn Mid-West through appropriate research and testing by known methods, at the time the Conveyor System was designed, distributed, supplied, or sold by Defendant Dearborn Mid-West, and were not known to end users, including the Decedent.

77. The Decedent was exposed to being caught-in pinch point hazards created by the Conveyor System components, including, but not limited to, steel trolley wheels, travel rail tracks, and the vehicle hub assemblies as the conveyor indexed forward, while using the Conveyor System for its intended or reasonably foreseeable purpose, without knowledge of its dangerous characteristics.

78. Defendant Dearborn Mid-West knew or should have known that any warnings disseminated with its Conveyor System were inadequate, failed to communicate adequate information on the dangers of exposure to being caught-in pinch point hazards created by the Conveyor System components, including, but not limited to, steel trolley wheels, travel rail tracks, and the vehicle hub assemblies as the conveyor indexed forward, and failed to communicate warnings and instructions that were appropriate and adequate to render the Conveyor System safe for its ordinary, intended, and reasonably foreseeable uses.

79. The information that Defendant Dearborn Mid-West did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled end users, such as the Decedent, to avoid exposure to pinch point hazards.

80. A reasonable company under the same or similar circumstances would have warned and instructed of the dangers of exposure to pinch point hazards associated with the Conveyor System.

81. This failure to warn is not limited to the information contained on the labeling or signage of Defendant Dearborn Mid-West's Conveyor System. Defendant Dearborn Mid-West was able to comply with relevant law by disclosing the known risks associated with exposure to pinch point hazards associated with the Conveyor System through other non-labeling and/or non-signage mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources. But Defendant Dearborn Mid-West did not disclose these known risks through any medium.

82. Had Defendant Dearborn Mid-West provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with exposure to pinch point hazards associated with the Conveyor System, the Decedent could have avoided the risk of being caught-in pinch point hazards associated with the Conveyor System. However, as a result of Defendant Dearborn Mid-West's failure to disclose the dangers posed by its Conveyor System, the Decedent could not have avoided his injuries.

83. Defendant Dearborn Mid-West's conduct, as described above, was reckless. Defendant Dearborn Mid-West risked the lives of end users of its Conveyor System, including the Decedent, with knowledge of the safety problems associated with the Conveyor System, and suppressed this knowledge from end users of the Conveyor System.

84. Defendant Dearborn Mid-West's lack of adequate warnings and instructions accompanying its Conveyor System was a substantial factor in causing the Decedent's injuries and death.

85. As a direct and proximate result of the aforementioned conduct by Defendant Dearborn Mid-West, the Decedent suffered non-economic injuries, including, but not limited to, serious and catastrophic injury and death, pre-death pain and suffering, and economic injuries, including, but not limited to, loss of future earning capacity.

**COUNT VI**
**Supplier Liability, O.R.C. § 2307.78**
**(Against Dearborn Mid-West)**

86. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

87. In the alternative, Defendant Dearborn Mid-West, at all relevant times herein, is in the business of selling, distributing, leasing, preparing, packaging, labeling, placing in the stream of commerce, installing, repairing, or maintaining the Conveyor System and was a supplier, as defined by Ohio Revised Code § 2307.71(A)(15).

88. The subject Conveyor System was supplied by Defendant Dearborn Mid-West to Defendant FCA US.

89. Defendant Dearborn Mid-West was negligent in its supply of the unreasonably dangerous Conveyor System without critical safety guards for pinch point hazards and/or in its failure to warn of the dangers associated with the Conveyor System that lacked critical safety guards for pinch point hazards, as described above.

90. Defendant Dearborn Mid-West's negligence in its supply of the Conveyor System was a substantial factor in causing the Decedent's injuries and death.

91. As a direct and proximate result of the aforementioned conduct by Defendant Dearborn Mid-West, the Decedent suffered non-economic injuries, including, but not limited to, serious and catastrophic injury and death, pre-death pain and suffering, and economic injuries, including, but not limited to, loss of future earning capacity.

**<u>COUNT VII</u>**
**Negligence**
**(Against Dearborn Mid-West)**

92. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

93. At all relevant times herein, Defendant Dearborn Mid-West contracted and/or otherwise agreed to provide post-sale installation and/or maintenance services on the Conveyor System for FCA US.

94. Dearborn Mid-West owed a duty of care to all foreseeable users of the Conveyor System, including the Decedent, to exercise reasonable care in the performance of post-sale installation of and/or maintenance services on the Conveyor System.

95. Upon information and belief, during the course of its post-sale installation and/or maintenance services, Dearborn Mid-West breached its duty of care by failing to install, removing, and/or altering critical equipment safety guards for pinch point hazards on the Conveyor System.

96. Dearborn Mid-West's breach of its duty of care by failing to install, removing, and/or altering critical equipment safety guards for pinch point hazards on the Conveyor System caused the Decedent to become entrapped on the Conveyor System and fatally crushed.

97. As a direct and proximate result of the aforementioned conduct by Defendant Dearborn Mid-West, the Decedent suffered non-economic injuries, including, but not limited to, serious and catastrophic injury and death, pre-death pain and suffering, and economic injuries, including, but not limited to, loss of future earning capacity.

**<u>COUNT VIII</u>**
**Wrongful Death, O.R.C. § 2745.01, *et. seq.***
**(Against All Defendants)**

98. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

99. Defendants' actions and/or inactions, as described above, either individually, collectively, or through their respective employees and/or agents, apparent or otherwise, were the direct and proximate cause of the Decedent's injuries and untimely death on August 21, 2024.

100. Plaintiff is the surviving spouse of the Decedent and duly appointed Personal Representative of the Decedent's estate and brings this action pursuant to O.R.C. § 2125 for the exclusive benefit of the persons identified in O.R.C. § 2125.02.

101. As a direct and proximate result of Defendants' actions or omissions, the Decedent's spouse, other statutory beneficiaries, and next-of-kin suffered the wrongful death of the Decedent and incurred and will continue to incur injuries and damages, including, but not limited to, funeral and burial expenses, loss of services of the Decedent, and loss of the society of the Decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, loss of prospective inheritance, and mental anguish.

**COUNT IX**
**Survivorship, O.R.C. § 2305.21**
**(Against all Defendants)**

102. Plaintiff incorporates all preceding paragraphs as if fully re-written herein.

103. Defendants' actions and/or inactions, as described above, either individually, collectively, or through their respective employees and/or agents, apparent or otherwise, were the direct and proximate cause of the Decedent's injuries and untimely death on August 21, 2024.

104. The Lucas County Coroner, Dr. Thomas Blomquist, determined the cause of death for the Decedent to be crushing injuries of the torso, and determined that the death was not instantaneous.

105. As a direct and proximate result of Defendants' wrongful conduct, as described above, the Decedent suffered bodily injury resulting in pre-death pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity of the enjoyment of life, and economic damages, including, but not limited to, a shortened life expectancy, loss of earnings, and loss of future ability to earn.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, including, but not limited to:

A. Compensatory and consequential damages in a sum of not less than Seventy-Five Thousand Dollars ($75,000.00);

B. Punitive damages for the intentional and/or reckless misconduct set forth herein;

C. Equitable relief, including, without limitation, prejudgment and post-judgment interest;

D. Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

E. Any and all other relief that this Court deems equitable, just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims so triable comprised of the maximum number of jurors permitted by law.

Dated: March 3, 2026

Respectfully submitted,

*<u>/s/ Justin J. Hawal</u>*
Justin J. Hawal (0092294)
Mark M. Abramowitz (0088145)
Justin S. Abbarno (0099559)
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Tel: (440) 953-8888
jhawal@dicellolevitt.com
mabramowitz@dicellolevitt.com
jabbarno@dicellolevitt.com

Christ Stewart (*pro hac vice*)
Nathaniel Hofman (*pro hac vice*)
**STEWART MILLER SIMMONS TRIAL ATTORNEYS**
One Overton Park
3625 Cumberland Boulevard, C-100
Atlanta, Georgia 30339
Tel: (404) 529-3476
cstewart@smstrial.com
nhofman@smstrial.com

Willie E. Gary*
**GARY, WILLIAMS, PARENTI, WATSON & GARY P.L.L.C.**
Waterside Professional Building
221 SE Osceola Street
Stuart, Florida 34990
Tel: (772) 283-8260
weg@williegary.com

*Counsel for Plaintiff*

* *Pro hac vice* motion forthcoming